# Illinois Official Reports

## Appellate Court

*People v. Daniels*, 2015 IL App (2d) 130517

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES K. DANIELS, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-13-0517 |
| Filed | March 6, 2015 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a prosecution for burglary where the State delayed obtaining an indictment for 79 days to gain a tactical advantage, defendant's due process rights were not violated and his burglary conviction was affirmed, since the delay between the information and the indictment was occasioned by defendant, but the public defender fee of $750 was vacated because of the trial court's failure to conduct the requisite hearing regarding defendant's financial resources where there was no evidence that the trial court made any reference to the public defender or to its intent to impose the fee, the fee was imposed by written order sometime after the hearing, and there was no evidence that a hearing "was held to resolve defendant's representation by the public defender." |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 12-CF-3315; the Hon. Mark L. Levitt, Judge, presiding. |
| Judgment | Affirmed in part and vacated in part. |

Counsel on
Appeal

Thomas A. Lilien and Richard C. Harris, both of State Appellate Defender's Office, of Elgin, for appellant.

Michael G. Nerheim, State's Attorney, of Waukegan (Lawrence M. Bauer and Barry W. Jacobs, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE HUDSON delivered the judgment of the court, with opinion.
Justices McLaren and Spence concurred in the judgment and opinion.

## OPINION

¶ 1 Following a jury trial, defendant, James K. Daniels, was found guilty of burglary (720 ILCS 5/19-1(a) (West 2010)) and sentenced to 11 years in prison. The trial court also ordered defendant to pay a $750 public defender fee (725 ILCS 5/113-3.1(a) (West 2012)). Defendant timely appeals, arguing: (1) his due process rights were violated where the State intentionally delayed obtaining an indictment for 79 days after filing the information in order to gain a tactical advantage over defendant; and (2) the $750 public defender fee must be vacated outright because it was imposed without the requisite hearing. For the reasons that follow, we affirm defendant's conviction of burglary, and we vacate the $750 public defender fee.

¶ 2 I. BACKGROUND

¶ 3 On August 8, 2012, in case No. 12-CF-2279, defendant was charged by information with burglary of an automobile (720 ILCS 5/19-1(a) (West 2010)), alleged to have been committed in June 2012. He was arrested on August 18, 2012, and filed a speedy-trial demand the next day.

¶ 4 On September 26, 2012, the State filed a motion requesting that defendant be ordered to submit a DNA sample. In its motion, the State alleged that blood evidence had been collected from the automobile at issue and that a DNA profile had been obtained. The State further alleged that entry of the DNA profile into the Combined DNA Index System (CODIS) resulted in a match with defendant's previously obtained DNA profile. The State argued that additional DNA from defendant was necessary for further comparison. The trial court granted the State's motion and, on October 19, 2012, a buccal swab was collected from defendant.

¶ 5 In a report dated October 23, 2012, forensic scientist Sarah E. Owens reported that the CODIS search for the DNA obtained from the blood evidence also detected a match with DNA evidence that had been obtained in case "12-45657" from "Item 01 (report 1)."

¶ 6    On November 5, 2012, defendant was charged by information in the present case with two counts of burglary (720 ILCS 5/19-1(a) (West 2010)). Count I alleged that, in July 2012, defendant entered a Chevrolet Suburban with the intent to commit theft. Count II alleged that, in August 2012, defendant entered a Chevrolet Tahoe with the intent to commit theft.

¶ 7    A bond hearing took place on November 6, 2012, and a public defender was appointed to represent defendant. The record contains several minute orders indicating that, after defendant's bond hearing, the matter was continued on defendant's motion on November 15, 2012, December 13, 2012, December 20, 2012, and December 27, 2012. On January 2, 2013, a preliminary hearing date was set, and on January 23, 2013, a grand jury indicted defendant on both counts.

¶ 8    On February 11, 2013, the parties were before the court on the "trial call" for case No. 12-CF-2279. The State informed the trial court that one of its necessary witnesses would be out of state until March 1 and that, as a result, it would be unable to meet the speedy-trial period. The State moved for and was granted an order to nol-pros the charge.

¶ 9    On March 18, 2013, a jury trial took place on the charges in the present case. At the outset, defendant moved to sever the charges. The trial court agreed that the charges should be severed. (The State subsequently elected to proceed on count II.) Defendant also asked that the case be dismissed, arguing that the State violated defendant's right to a speedy trial. According to defendant, the speedy-trial period began on November 6, 2012, when defendant was brought into bond court and informed of the new charges, and thus more than 120 days had passed. The State responded that, because defendant had been in custody on an unrelated charge on November 6, 2012, the speedy-trial period did not begin until January 23, 2013, when defendant was indicted on the later charges, and thus only 54 days had passed. The trial court agreed with the State and denied the motion.

¶ 10    At trial, Waukegan police officer Edward Heidler testified that, on August 7, 2012, he was called to a crime scene, involving the burglary of a Chevrolet Tahoe, to collect evidence. He identified a yellow and black hat, and he testified that he had collected the hat from the car. Waukegan police officer Timothy John Ives testified that, on October 19, 2012, he collected a buccal swab from defendant. Forensic scientist Michelle Thomas testified that DNA, which she had obtained from the hat, matched the DNA that she had obtained from defendant's buccal swab. She further testified that defendant's DNA standard would have been sent back to the police department after her testing but that it was no longer available.

¶ 11    At the close of evidence, defendant moved for a directed verdict, based primarily on the State's failure to introduce the DNA sample obtained from defendant. The State responded that the chain of custody of the evidence had been sufficiently established through the point that it had been tested by Thomas. The State argued further that its inability to produce the DNA sample went to the weight of the evidence, not its admissibility. The trial court denied defendant's motion. The jury found defendant guilty of burglary.

¶ 12    On April 24, 2013, following a sentencing hearing, the trial court sentenced defendant to 11 years in prison. A document labeled "Exhibit A" titled "ASSESSMENT OF FINES, FEES, COSTS, AND RESTITUTION" was filed that same day. The first paragraph reads:

> "HAVING DETERMINED ALL ISSUES IN THIS CAUSE, INCLUDING DEFENDANT'S FINANCIAL ABILITY TO PAY, THIS COURT HAS ASSESSED AND ORDERED THE PAYMENT BY THE THE [*sic*] DEFENDANT OF THE FOLLOWING ***."

It is followed by an itemized list of assessments imposed on defendant. The list includes a $750 public defender fee.

¶ 13 Following the denial of his motion for reconsideration of his sentence, defendant timely appealed.

¶ 14                                              II. ANALYSIS

¶ 15                                             A. Trial Delay

¶ 16 Defendant first argues that his due process rights were violated, where the State intentionally delayed obtaining an indictment for 79 days after filing the information (from November 5, 2012, to January 23, 2013), in order to gain a tactical advantage over defendant. In response, the State argues that defendant forfeited this argument by failing to raise it below. In the alternative, the State argues that defendant's due process rights were not violated, because defendant caused the preindictment delay and because defendant cannot establish that he was prejudiced by the delay.

¶ 17 Defendant concedes that the issue has been forfeited. However, defendant asserts that his claim meets the second prong of the plain-error rule, permitting review where the "error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007); *People v. Herron*, 215 Ill. 2d 167, 186-87 (2005). However, before applying that prong of the plain-error rule, we must first determine that error occurred. *People v. Thompson*, 238 Ill. 2d 598, 613 (2010); *cf. People v. White*, 2011 IL 109689, ¶ 148 ("Where the only basis proffered for plain-error review is a claim that the evidence is closely balanced, an assessment of the impact of an alleged evidentiary error is readily made after reading the record. When it is clear that the alleged error would not have affected the outcome of the case, a court of review need not engage in the meaningless endeavor of determining whether error occurred.").

¶ 18 As an initial matter, we note that, contrary to his argument below, defendant now concedes that, because he was in custody (for the charges pending in case No. 12-CF-2279) when the State filed the information in the present case, the statutory speedy-trial period in the present case did not begin until January 23, 2013, when the State obtained an indictment. See *People v. Martinez*, 264 Ill. App. 3d 807, 812 (1994) (where a defendant is in custody for an unrelated charge pending against him, the speedy-trial period on the new offense begins on the date of indictment on the new offense); *People v. Chaney*, 48 Ill. App. 3d 775, 778 (1977) (same). Nevertheless, defendant maintains that, because he was already in custody and because the State already knew of the DNA evidence against him when it filed the information, it had no reason to delay indicting defendant for 79 days "other than to manipulate the applicable speedy trial limitations period."

¶ 19 A defendant who claims that a preindictment delay violated his constitutional rights to due process must make a clear showing that he was actually and substantially prejudiced by the delay. *People v. Lawson*, 67 Ill. 2d 449, 459 (1977). Upon such a showing, the burden shifts to the State to establish "the reasonableness, if not the necessity, of the delay." *Id*. If the defendant is unable to establish prejudice, then no due process violation has occurred and the court need not ascertain the reasonableness or necessity of the delay. *Id*. at 459-60. Defendant argues that the 79-day delay between the information and the indictment caused

him "actual and substantial prejudice because it helped the State [to] satisfy the speedy trial term."

¶ 20 We need not consider whether defendant was actually and substantially prejudiced by the delay, because the record reveals that the delay was occasioned by defendant. "A delay is considered to have been occasioned by the defendant when the defendant's acts caused or contributed to the delay. [Citation.] When a defense attorney requests a continuance on behalf of a defendant, any delay caused by that continuance will obviously be attributed to the defendant. [Citation.]" *People v. Kaczmarek*, 207 Ill. 2d 288, 296 (2003). Here, the minute orders show that, after the bond hearing, the matter was continued several times on defendant's motion. Defendant concedes that the minute orders "appear to indicate that [the present case] was continued on the defendant's motions for status on preliminary hearing." Nevertheless, defendant argues that the first continuance was granted at a hearing at which he was not personally present and that he was represented by four different public defenders. Be that as it may, the fact remains that defendant, through counsel, requested the continuances.

¶ 21 Accordingly, because defendant caused the delay of which he complains, he cannot establish error. Absent error, there can be no plain error.

¶ 22 B. Public Defender Fee

¶ 23 Defendant next argues that the $750 public defender fee must be vacated outright, because it was imposed without the requisite hearing. In response, the State concedes that the fee must be vacated, but it argues that, because the court held a hearing, albeit an insufficient one, the case should be remanded for a proper hearing.

¶ 24 Although defendant did not raise this issue below, we may consider the issue as forfeiture does not apply. See *People v. Love*, 177 Ill. 2d 550, 564 (1997) ("Where *** the trial court wholly ignored the statutory procedures mandated for a [public defender] reimbursement order *** and instead ordered reimbursement *sua sponte* without any warning to the defendant, fairness dictates that waiver should not be applied."). This issue is a question of law, and we review it *de novo*. *People v. Caballero*, 228 Ill. 2d 79, 82 (2008).

¶ 25 Section 113-3.1(a) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/113-3.1(a) (West 2012)) authorizes the trial court to order a criminal defendant for whom counsel has been appointed to pay a reasonable amount to reimburse the county or the state. However, prior to ordering reimbursement, the trial court must conduct a hearing, within 90 days of sentencing, regarding the defendant's financial resources. *Id.*; *People v. Williams*, 2013 IL App (2d) 120094, ¶¶ 12-13. The hearing must not be conducted in a perfunctory manner. *People v. Somers*, 2013 IL 114054, ¶ 14. Instead, "the court must give the defendant notice that it is considering imposing the fee, and the defendant must be given the opportunity to present evidence regarding his or her ability to pay and any other relevant circumstances." *Id.* Where the trial court conducts a timely hearing, but one that is insufficient to comply with the requirements of section 113-3.1(a) of the Code, the proper remedy is to vacate the public defender fee and remand for a proper hearing on the defendant's ability to pay. *Id.* ¶¶ 14-18; *Williams*, 2013 IL App (2d) 120094, ¶ 24.

¶ 26 The issue here is not whether the trial court held a hearing that was insufficient to comply with the requirements of section 113-3.1(a) of the Code; instead, the issue is whether the trial court held a hearing at all. On this issue, we find *Somers* and *Williams* instructive.

¶ 27    In *Somers*, the trial court imposed a public defender fee after asking the defendant three questions regarding his financial circumstances. *Somers*, 2013 IL 114054, ¶ 4. On appeal to the supreme court, the defendant argued that the fee must be vacated outright, because the trial court failed to comply with section 113-3.1(a) of the Code. *Id.* ¶ 12. The supreme court stated that the trial court's few questions to the defendant about his financial circumstances clearly did not satisfy the requirements of section 113-3.1(a). *Id.* ¶ 14. The supreme court continued:

> "Just as clearly, though, the trial court did have some sort of a hearing within the statutory time period. The trial court inquired of defendant whether he thought he could get a job when he was released from jail, whether he planned on using his future income to pay his fines and costs, and whether there was any physical reason why he could not work. Only after hearing defendant's answers to these questions did the court impose the fee. Thus, we agree with the State's contention that the problem here is not that the trial court did not hold a hearing within 90 days, but that the hearing that the court did hold was insufficient to comply with the statute." *Id.* ¶ 15.

The supreme court therefore remanded the cause for a proper hearing. *Id.* ¶ 18.

¶ 28    In *Williams*, we addressed the issue of what constitutes a hearing on a public defender fee. There, a public defender represented the defendant through the preliminary hearing, arraignment, and pretrial stages. *Williams*, 2013 IL App (2d) 120094, ¶ 4. The defendant thereafter retained private counsel, and the public defender asked to withdraw. At that time, the court noted the representation provided by the public defender and ordered the defendant to pay a $750 public defender fee. On appeal, the defendant argued that there could be no remand for a hearing on his ability to pay a public defender fee, because, unlike in *Somers*, the trial court did not ask him any questions about his ability to pay before it imposed the fee. *Id.* ¶ 19. We rejected that argument, stating:

> "*Somers* requires only that the trial court hold 'some sort of a hearing within the statutory time period.' [Citation.] While the trial court in *Somers* asked the defendant a few questions related to his finances, our supreme court never stated that such questioning was required for a hearing. Rather, the supreme court stated that a hearing 'clearly' took place [citation], implying that less would also suffice to constitute a 'hearing.' " *Id.* ¶ 20.

We went on to note that "Black's Law Dictionary defines a 'hearing' as a 'judicial session, usu[ally] open to the public, held for the purpose of deciding issues of fact or law, sometimes with witnesses testifying.' [Citations.]" *Id.* We found that, although the proceeding was insufficient to meet the requirements of section 113-3.1(a), it nevertheless "met this definition of a 'hearing,' as it was a judicial session open to the public, held to resolve defendant's representation by the public defender." *Id.* We noted that "the trial court did consider the public defender's time and effort in representing defendant and did set a payment amount, but, because it did not consider defendant's ability to pay, the hearing was inadequate." *Id.* ¶ 22. Accordingly, we concluded that, as in *Somers*, because the trial court conducted a timely hearing "on the issue of the public defender fee," a remand for an appropriate hearing was warranted. *Id.* ¶ 24.

¶ 29    The State argues that the present case is like *Somers*. According to the State, Exhibit A indicates that the trial court examined defendant's ability to pay. The State points out that the presentencing investigation report, which was considered by the trial court, showed that

defendant had not worked since 1998 and had no income. According to the State, the trial court ordered the public defender fee *contemporaneously* with sentencing defendant. We disagree. Although there is no question that a sentencing hearing took place and that the trial court imposed the public defender fee on the same date as that hearing, Exhibit A does not support the conclusion that the trial court conducted a hearing on the issue of the public defender fee. A review of the transcript of the sentencing hearing shows that here, unlike in *Somers*, during the hearing the trial court made absolutely no reference to the public defender or to its intent to impose the fee. Instead, the fee was imposed at some time after the hearing, by written order. There is simply no evidence that there was a hearing "held to resolve defendant's representation by the public defender." *Id.* ¶ 20.

¶ 30    We note that the State makes no argument in the alternative that, despite the absence of a hearing, the proper remedy would be to remand for a hearing. Accordingly, we grant defendant the relief he seeks, and we vacate the fee outright.

¶ 31                                III. CONCLUSION
¶ 32    For the reasons stated, we affirm defendant's burglary conviction, but we vacate the $750 public defender fee.

¶ 33    Affirmed in part and vacated in part.